IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAVADO AUDRIC THOMPSON,
Inmate No. C01034,
     Plaintiff,

vs.                         Case No.: 3:14cv246/MCR/EMT

Captain PATRICK WALSH and
Officer FREDDY JOHNSON,
     Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Javado Audric Thompson, an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983. Presently before the court is Defendants' Motion for Summary Judgment (ECF No. 56). Plaintiff filed a response to the motion (ECF No. 76), and Defendants filed a reply (ECF No. 77), to which Plaintiff filed a response (ECF No. 78).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.

*See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); Fed. R. Civ. P. 72(b).   After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that Defendants' motion for summary judgment should be granted as to all of Plaintiff's claims for damages except for his claim of nominal damages, and that the motion should be denied in all other respects.

## I.    BACKGROUND AND INTRODUCTION

At all times relevant to this action, Plaintiff was incarcerated at Okaloosa Correctional Institution ("OCI") within the Florida Department of Corrections (*see* ECF No. 17 (the Third Amended Complaint and operative pleading)).  Plaintiff claims that Defendants used excessive force against him in two separate instances by striking him in the genital area during a pat search and by applying chemical agents upon him in his cell, in violation of the Eighth Amendment.  Plaintiff also claims Defendants retaliated against him because of a letter of complaint he had written to the Governor of Florida.  As relief, Plaintiff seeks compensatory, punitive, and nominal damages.

## II.    SUMMARY JUDGMENT STANDARDS

In order to prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his or her case or present affirmative evidence that the nonmoving party will be unable to prove his or her case at trial.  *See* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed.

2d 265 (1986).  If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*, 477 U.S. at 248.  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*  The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  Speculation or conjecture from a party cannot create a genuine issue of material fact.  *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment."  Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324.  The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged

evidentiary deficiency.  *See* Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him or her.  *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999).  Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove.  *See* Celotex Corp., 477 U.S. at 317.

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment, or grant summary judgment if the moving party's motion and supporting materials—including the facts considered undisputed—show that the moving party is entitled to it.  *See* Fed. R. Civ. P. 56(e)(2, 3) (2010).  With these standards in mind, the

court conveys the following as the material facts for purposes of Defendants' motion for summary judgment.

## III.    REVIEW OF FACTS[1]

Plaintiff alleges that on December 22, 2013, while he was in line at the "chow hall," Defendant Officer Patrick Walsh ("Walsh") called Plaintiff out of the line and asked "why are you writing all of these bull [_] letters and grievance[s]?", apparently referring to a letter Plaintiff had written to Florida Governor Rick Scott regarding sexual abuse at the OCI (ECF No. 17 at 5).[2]  Plaintiff refused to respond, whereupon Walsh told him to "cuff up" and then escorted Plaintiff to confinement (*id.*).   During the escort, Walsh took Plaintiff behind a building and performed a "pat search" on him.  Walsh kicked Plaintiff's feet apart; roughly squeezed Plaintiff's thighs; and then, making a chopping motion with his hand, struck Plaintiff in the penis and testicles (*id.* at 6).  Plaintiff alleges that the blow was "with enough force that plaintiff was about to fall to his knees right before the defendant grabbed the plaintiff up under the arm and stated, 'Write the governor about that.'" (*id.*).  Plaintiff states that he saw medical

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

[2] Plaintiff attaches a copy of a December 2, 2013, letter he wrote to Governor Scott, claiming sexual misconduct by corrections officers at OCI mainly because during searches of inmates (or at least searches of Plaintiff) they touch an inmate's genital area (ECF No. 76 at 29–31).  According to Defendants, and as stated by Plaintiff, Plaintiff has been pat searched numerous times at OCI and has complained that these searches amount to sexual assault (ECF No. 56 at 6, 56-2 at 5–7).

staff for his injury.  No blood was found, but Plaintiff states he "constantly suffered from pain in that area and saw the doctor concerning also having problems urinating" (*id.*).

Plaintiff next alleges that on December 23, 2013, Defendant Freddy Johnson threatened to use chemical agents on him and to write false disciplinary reports against him "because the plaintiff petitioned Governor Rick Scott . . . concerning staff sexual abuse" (*id.* at 7).  Plaintiff indicates that while Defendant Johnson spoke to him, Johnson was holding the first page of the letter that Plaintiff had written to Governor Scott (ECF No. 76 at 6, 18, 22).  Plaintiff also alleges that Johnson threatened him with a "hook up," which according to Plaintiff meant that Johnson would be tampering with Plaintiff's food (ECF No. 17 at 7).  Plaintiff states that this caused him to not accept any meals in the days that followed out of fear that the food would not be safe to eat (*id.*).  As a result, Plaintiff alleges he grew weak and that on December 26, 2013, Plaintiff's "body failed to allow plaintiff to respond both mentally and physically" to the point that officers had to extract him from his cell to be seen by medical staff (*id.*).  Plaintiff relates that he was unable to walk to medical or "back upstairs to his cell" (*id.* at 8).  Plaintiff was therefore placed in a bottom-floor single man cell.

On December 27, 2013, "Defendant [evidently Defendant Johnson] and company" ordered Plaintiff to come to his cell door and submit to a cell search.

Plaintiff suggests that the officers knew that he was unable to stand or walk in order to do that, but "with malicious and sadistic intent" they commanded him to do so anyway (*id.*).  Plaintiff alleges he crawled to the door instead and while on all fours submitted his hands through the door flap so that he could be handcuffed (*id.*). Defendant Johnson then gave the order for Plaintiff to be sprayed with chemical agents, which was evidently accomplished by an unidentified officer who sprayed Plaintiff in the eyes, mouth, and nose (*id.*).  Plaintiff claims that the chemical agent caused him respiratory distress, that he felt like he was having a heart attack, and that his face was red and dry for four days (*id.* at 9).  Plaintiff claims his eyes and tonsils were damaged, the latter such that they needed to be removed (*id.* at 8).[3]  Plaintiff states he received Zoloft for his subsequent panic attacks and his increased mental and emotional issues (*id.* at 9).

Under Defendants' version(s) of the above events, while in line at the "chow hall" on December 22, 2013, Plaintiff failed to comply with an order to remain quiet, for which Plaintiff was subsequently written a disciplinary report ("DR") for disrespect to officials.  Defendant Walsh acknowledges that, as prison records show, he conducted a pat search of Plaintiff and escorted him to confinement following this

---

[3]  Plaintiff suggests that, while his tonsils needed to be removed, they were not removed due to Plaintiff's religious beliefs, and as a result his tonsils continue to be swollen despite the use of unidentified medication (ECF No. 17 at 8).

incident, but he had no specific recollection regarding these events (ECF No. 56-3 at 2). Walsh states that he conducts his pat searches in the same, routine manner, where "incidental touching of the groin area is appropriate because weapons can be located anywhere on the inmate, and present a safety and security concern for the officer conducting the escort and other staff the inmate will encounter during the escort" (*id.*).

Relative to the cell incident on December 27, 2013, Defendants provide the affidavit of Sergeant Mark Rudolph, who ordered Plaintiff to submit to wrist restraints that morning so that his cell could be searched. According to Rudolph, "[w]rist restraint procedures involve the inmate placing his hands behind his back and through the food portal on the cell door to be handcuffed by the correctional officer" (ECF No. 56-4 at 2). Rudolph states that Plaintiff refused his order to submit for handcuffing, which prompted Rudolph to contact Defendant Johnson (*id.*). As a result of Plaintiff's refusal to follow orders, Rudolph wrote a DR against Plaintiff for disobeying an order, which was approved by Johnson as the shift supervisor (*id.*).

Defendants submit video footage from a handheld camera as evidence related to the December 27 incident (ECF No. 56, Ex. H, *submitted under seal*). The footage shows a Plaintiff being ordered to stand at the cell door with his hands behind his back so that he could be handcuffed (*id.* at 06:10–06:30). When Plaintiff remained on the

floor with his hands pointed upward, he was sprayed with three short bursts of chemical agent through the door flap (*id.* at 06:32–06:40).   A few minutes later, Plaintiff can be seen on his feet and at the door inside the cell (*id.* at 10:10–10:40). Subsequently, Plaintiff was again ordered to stand at the cell with his hands behind him, whereupon he complied.   He then was handcuffed; removed from the cell; escorted to a shower room where he showered while standing; escorted to what appeared to be a medical unit; escorted to an unidentified area where he stood waiting for two minutes or longer; and then taken back to his cell where, once inside, his handcuffs were removed using the same method as earlier (*id.* at 11:10–38:40).   While there were two guards at each side holding onto one of Plaintiff's arms as he walked, they did not appear to provide much actual assistance to Plaintiff as he walked or stood.

Defendants provide a statement from a Nurse Jordan, R.N., indicating Plaintiff's general ability to ambulate despite the hunger strike he had started: "Thompson should have had no problems walking if he had not eaten in 5 days."  (ECF No. 56-4 at 14). Defendant Johnson also attests to verifying through Nurse Jordan and one of Plaintiff's medical forms that Plaintiff had no known medical conditions that would be exacerbated by the use of chemical agents upon him (ECF No. 56-6 at 2).

Defendant Johnson also received approval from the OCI Warden for the use of chemical agents because of Thompson's refusal to submit to wrist restraints (*id.*).

Defendants also submit medical records showing that, as relevant to the incident of December 22 involving the pat search, Plaintiff complained of genital pain following the incident. The nurse inspected Plaintiff's genital area and found no redness or swelling, no pain upon palpation, and no problems urinating (ECF No. 56-8 at 2, 32–34). A urinalysis was performed, with normal results (*id.*). Plaintiff was also seen two days later by Luis Rivera, M.D., who found Plaintiff to be asymptomatic with regard to genital injury (*id.* at 2, 31). Plaintiff did report to sick call as late as April of 2014, complaining of bumps on his inner thighs (ECF No. 76 at 32). The relevant medical notes, though difficult to discern due to legibility problems, appear to state that the lumps were small and not tender (*id.*). The notes also appear to indicate that Plaintiff reported noticing the bumps three months prior and that he "denie[d] trauma" (*id.*). Plaintiff was provided ibuprofen for pain (*id.* at 33).

Medical records also show that Plaintiff was seen following the incident of December 27 involving the use of chemical agents. The nurse noted redness on Plaintiff's face but nothing more in the way of symptoms (ECF No. 56-8 at 40–41). On January 8, 2014, Plaintiff reported to sick call with complaints of a sensation of having a foreign body in his throat (*id.* at 27). Plaintiff was reported to have stated that

he had this condition since arriving in prison in 2007 (*id.*).  He continued to complain periodically of throat pain and difficulty swallowing for the next three months, and on April 18, 2014, he was seen by Dr. Fares, who found Plaintiff to have indications of tonsillitis (*id.* at 2, 49–50).  Although a recommendation for a "direct laryngoscopy evaluation" was apparently made, Plaintiff refused this or any possible surgery on his tonsils due to his religious beliefs, and he was continued on antibiotics (*id.* at 2, 12).  On April 6, 2014, Plaintiff first complained about blurry vision.  His vision was tested with normal results other than the fact that he was noted to have 20/70 vision in his left eye, for which a consult was scheduled (*id.* at 2, 14, 20).

## IV.  DISCUSSION

As is relevant to Plaintiff's two claims of excessive force, the Eighth Amendment standard has a subjective and an objective component.  Under the subjective component, it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986).  "Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting Whitley, 475 U.S. at 320–21).  In determining whether an application of force was applied maliciously and sadistically to cause harm,

a variety of factors are considered including: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." Hudson v. McMillian, 503 U.S. 1, 7–8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); *see also* Whitley, 475 U.S. at 321; Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999). The evidence must reveal more than "a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives." Whitley, 475 U.S. at 322. Further, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). That officials followed prison regulations in administering force or restraint provides evidence that they acted in good faith and not to inflict pain. Campbell, 169 F.3d at 1376 (citation omitted). Thus, as summarized in Campbell, "[p]recedent dictates that [the determination whether defendants acted maliciously and sadistically for the very purpose of causing harm] be guided by the five Hudson/Whitley factors outlined above, by deference to prison officials' punitive judgments, and by this

Court's previous holdings that compliance with prison policies evidences officials' good faith." *Id.*

In addition to the "subjective component" described above, there exists an "objective component" that determines if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. *See* Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2326, 115 L. Ed. 2d 271 (1991). In situations involving allegations of excessive force, the Supreme Court has abrogated any requirement that the resulting injury be "significant." Hudson, 503 U.S. at 9. However, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* (quotation omitted). "[Excluded] from constitutional recognition [are] de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.*, 503 U.S. at 9–10 (quotation marks and citation omitted); Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000) ("[A] minimal amount of force and injury . . . will not defeat an officer's qualified immunity."). The Eleventh Circuit has repeatedly held that a push or shove that causes pain and necessitates merely minor medical treatment or none at all is not a constitutional violation, even where the prisoner was restrained and no further force was necessary. *See, e.g.*, Jones v. City of Dothan, 121 F.3d 1456, 1460–61 (11th Cir. 1997); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1556 (11th Cir. 1993), *modified*,

14 F.3d 583 (11th Cir. 1994). Moreover, an unsupported or conclusory allegation that the prisoner suffered serious injury should be discounted, and the absence of further evidence of injury justifies the conclusion that the use of force on the prisoner was minimal. Brown v. Smith, 813 F.2d 1187 (11th Cir. 1987); Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990).

Several Eleventh Circuit cases address the issue of whether there was sufficient evidence at the summary judgment stage to establish that the defendant officer's use of force was more than de minimis.  *Compare* Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002) (holding that the kinds of injuries the prisoner suffered, including rib fractures, back injuries, lacerations to the scalp, and abdominal injuries that required nine days of hospitalization and months of rehabilitation, could not have been the result of a de minimis use of force), *and* Harris v. Chapman, 97 F.3d 499, 505–06 (11th Cir. 1996) (holding that defendant officer's use of force was more than de minimis where the plaintiff was kicked and beaten, had his head snapped backward with a towel, and was slapped twice in the face, because the kicking and use of the towel caused or exacerbated Harris's back condition, although noting that it was a "very close case" as to whether force used by defendant officer was de minimis), *and* Clark v. Argutto, 221 F. App'x  819, 825–26 (11th Cir. 2007) (unpublished) (inmate presented evidence from which jury could conclude that force applied by officer was

excessive and not de minimis where officer repeatedly tightened inmate's hand restraint in response to inmate's complaints of pain and numbness and kicked restrained inmate to the floor hard enough that inmate hit his head and became dazed and disoriented, and injuries, including abrasions and nerve damage to inmate's wrist, took several weeks to heal and left scars, a possible cyst, and some pain, numbness, and stinging), *with* <u>Jones v. City of Dothan</u>, 121 F.3d 1456, 1460–61 (11th Cir. 1997) (holding that while the use of force, including "slamming" plaintiff against a wall, kicking his legs apart, requiring him to raise his arms above his head, and pulling his wallet from his pants, causing plaintiff to experience pain from having to lift his arms since he had previously suffered a stroke and pain in his arthritic knee from having his legs kicked apart, for which the plaintiff later received minor medical treatment, may have been unnecessary, the actual force used and the injury inflicted were both de minimis in nature), *and* <u>Gold v. City of Miami</u>, 121 F.3d 1442, 1446–47 (11th Cir. 1997) (holding that minor nature of plaintiff's injuries, that is, twenty minutes of pain and skin abrasions from handcuffs, for which plaintiff did not seek medical treatment, reflected that minimal force was used to apply the handcuffs), *and* <u>McCall v. Crosthwait</u>, 336 F. App'x 871 (11th Cir. 2009) (unpublished) (officer's use of force and extent of pretrial detainee's injuries were de minimis and, therefore, failed to establish a constitutional violation, where officer pushed pre-trial detainee out of jail's

elevator, causing him to hit partially open steel cell door and fall against plexiglass window, and detainee suffered bruised shoulder and elbow, for which he received prescription for ibuprofen), *and* <u>Johnson v. Moody</u>, 206 F. App'x 880, 885 (11th Cir. 2006) (unpublished) (minor nature of injury suggested that officer's pushing or kicking of metal tray door on inmate's hand was de minimis use of force where medical records belied inmate's claim that his injury was not de minimis because: (1) he was given a tetanus shot, and he was subsequently treated with bandages and non-prescription pain relievers; (2) his finger was not broken or fractured; (3) there was no evidence that he suffered any permanent injury or debilitating pain; and (4) fact that inmate made sick call requests for five months after incident did not mean that his subjective complaints of pain were accurate or that his injury was serious).

Defendants concede to there being genuine issues of material fact that prevent summary judgment being granted against Plaintiff's claims that his Eighth Amendment rights were violated during both the December 22 pat down incident and the December 27 incident involving the use of chemical agents at his cell (ECF No. 56 at 27; *see also* ECF No. 76 at 7 (Plaintiff's recognition of this concession)).  Instead, Defendants contend that they are entitled to qualified immunity as it relates to both of these claims.

The doctrine of qualified immunity shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or

constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); Conn v. Gabbert, 526 U.S. 286, 290, 119 S. Ct. 1292, 1295, 143 L. Ed. 2d 399 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)); Powell v. Ga. Dep't of Human Resources, 114 F.3d 1074, 1077 (11th Cir. 1998). Qualified immunity is intended to allow government officials to carry out their discretionary duties without fear of litigation and personal liability or harassing litigation, and thus it protects "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001)).

The Supreme Court has established a two-part test for evaluating a claim of qualified immunity. First, as with any Section 1983 claim, the court must determine whether a constitutional right has been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). The court must assess the facts in a light most favorable to the party asserting the injury. Id. Second, if such a violation is established, the court determines whether the right was "clearly established" at the time of the violation. Id. The very action in question need not have been held unlawful for an official to lose the protection of qualified immunity. Hope,

536 U.S. 739; <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d

523 (1987).  Officials can still be on notice that their conduct violates established law

even in novel factual circumstances, and there is no requirement that previous cases

be "fundamentally" or even "materially" similar.  <u>Hope v. Pelzer</u>, 536 U.S. 730, 739,

122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).  Rather, the law must give defendants "fair

warning" that their actions are unconstitutional.  *Id.*

Importantly, as it concerns Eighth Amendment excessive force claims:

> The qualified immunity inquiry usually involves two prongs. First, a plaintiff must show that a constitutional or statutory right has been violated.  Second, a plaintiff must show that the right violated was clearly established. <u>Danley v. Allen</u>, 540 F.3d 1298, 1306 (11th Cir. 2008) (citations omitted).  For claims of excessive force in violation of the Eighth or Fourteenth Amendments, however, a plaintiff can overcome a defense of qualified immunity by showing only the first prong, that his Eighth or Fourteenth Amendment rights have been violated. <u>Johnson v. Breeden</u>, 280 F.3d 1308, 1321–22 (11th Cir. 2002). We created this rule because, for an excessive-force violation of the Eighth or Fourteenth Amendments, "the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution . . . ." *Id.  See also* <u>Danley</u>, 540 F.3d at 1310 (conducting qualified immunity analysis for alleged Fourteenth Amendment violation by examining solely the first prong).

<u>Fennell v. Gilstrap</u>, 559 F.3d 1212, 1216–17 (11th Cir. 2009); *see also* <u>Skrtich v. Thornton</u>, 280 F.3d 1295, 1301 (11th Cir. 2002).

Here, Defendants' concession that factual issues preclude summary judgment as to violations of Plaintiff's Eighth Amendment rights essentially concedes the first prong of the qualified immunity standard. But, as firmly held by the Eleventh Circuit, once the first prong is met, the second prong need not be considered because the constitutional right at hand is automatically considered to be clearly established. Consequently, Defendants' argument for qualified immunity, based solely on the second prong, is unavailing.

Next, Plaintiff claims that, in violation of his rights under the First Amendment, virtually all of Defendants' actions as recited above were taken in retaliation over the fact that he had petitioned the governor and filed prison grievances. The First Amendment forbids prison officials from retaliating against a prisoner for exercising his right of free speech to address concerns about the conditions of his confinement. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). The prisoner plaintiff must sufficiently allege facts to establish that the actions taken against him were in retaliation for filing prison grievances or for similar First Amendment expressions and that the allegedly retaliatory conduct would not have occurred but for the retaliatory motive. Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986); Jackson v. Fair, 846 F.2d 811, 820 (1st Cir. 1988). Plaintiff must come forward with more than "general attacks" on Defendants' motivations and must produce "affirmative evidence" of retaliation.

Crawford-El v. Britton, 523 U.S. 574, 118 S. Ct. 1584, 1598, 140 L. Ed. 2d 750 (1998)

(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57, 106 S. Ct. 2505, 2514,

91 L. Ed. 2d 202 (1986)).  Plaintiff must be able to show a causal link between the

protected activity and the adverse treatment he received in retaliation.  Flaherty v.

Coughlin, 713 F.2d 10, 13 (2d Cir. 1983).  Such a causal connection may be alleged by

a chronology of events that create a plausible inference of retaliation.  Cain v. Lane,

857 F.2d 1139, 1143 n.6 (7th Cir. 1988).  "The relevant showing . . . must be more than

the prisoner's 'personal belief that he is the victim of retaliation.'"  Johnson v.

Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (quoting Woods v. Edwards, 51 F.3d 577,

580 (5th Cir. 1995)).  Appropriate deference should be afforded to prison officials "in

the evaluation of proffered legitimate penological reasons for conduct alleged to be

retaliatory."  Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (citing Sandin v.

Conner, 115 S. Ct. 2293, 2299 (1995)).  Because regulatory actions taken by prison

officials are presumed to be reasonable, the inmate must produce "specific,

nonconclusory factual allegations that establish improper motive causing cognizable

injury. . . ."  Crawford-El, 118 S. Ct. at 1596–97; Harris v. Ostrout, 65 F.3d 912,

916–17 (11th Cir. 1995); *see also* Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995)

(because claims of retaliation may be easily fabricated, they should be reviewed with

skepticism).

In the case at bar, Defendants assert that Plaintiff's retaliation claim must fail

because Plaintiff's alleged retaliatory action was in the form of false disciplinary

reports where Plaintiff was punished for his conduct in both the pat search and cell

extraction incidents.[4]  Defendants contend that, because Plaintiff was afforded due

process during these disciplinary actions and was found guilty, Defendants' actions

were legitimized and therefore cannot be the foundation for a claim of retaliation.  It

is true that, "[i]f a prisoner is found guilty of an actual disciplinary infraction after

being afforded due process *and* there was evidence to support the disciplinary panel's

fact finding, the prisoner cannot later state a retaliation claim against the prison

employee who reported the infraction in a disciplinary report." O'Bryant v. Finch, 637

F.3d 1207, 1215 (11th Cir. 2011).  More generally, even if an officer is claimed to have

acted in a retaliatory manner, he cannot be found to have violated the prisoner's rights

if he can demonstrate that he would have taken the same action against a prisoner

regardless of the alleged retaliatory animus.  Burke v. Bowns, 653 F. App'x 683, 702

(11th Cir. 2016) (finding that an alleged retaliatory motive "does not negate the

propriety of using a limited amount of force to restrain an inmate believed to have spit

on an officer"); Smith v. Florida Dep't of Corr., 713 F.3d 1059, 1063 (11th Cir. 2013)

---

[4] Defendants provide that Plaintiff was disciplined for disrespect to officials for his conduct
in the chow line, on December 22, and for disobeying an order for his conduct in his cell, on
December 27 (ECF No. 56 at 4, 7).

Case No: 3:14cv246/MCR/EMT

(finding that a "defendant can prevail on summary judgment if [he] can show [he] would have taken the same action in the absence of the protected activity") (citing Smith v. Mosley, 532 F.3d 1270, 1277–78 (11th Cir. 2008)).

However, Plaintiff points out that Defendants did not simply retaliate by filing false disciplinary reports. He also fairly alleged that Defendants inflicted excessive force on him during the two aforementioned instances; threatened to inflict these and other harms, such as tampering with his food; and sometimes did so while particularly referencing the letter Plaintiff had written to the governor, or even displaying a page from that letter. And, Plaintiff fairly represented these aspects of retaliation in his Statement of Claims on the complaint form (ECF No. 17 at 10; *see also* ECF No. 76 at 2). Accordingly, the court finds that the scope of the alleged retaliation exceeds the fact that Plaintiff received two disciplinary reports, and the court otherwise finds that Plaintiff has established a plausible nexus of events that establish a retaliatory motive. Summary judgment should therefore be denied as to Plaintiff's First Amendment claim as well.

Last, Defendants assert that, under 42 U.S.C. § 1997e(e), Plaintiff's claims for compensatory and punitive damages are unavailable. This section provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without

a prior showing of physical injury or the commission of a sexual act (as defined in

section 2246 of Title 18)."  Thus, where a prisoner plaintiff alleges constitutional

violations he is prevented under § 1997e(e) from seeking punitive or compensatory

damages in the absence of a physical injury.  Smith v. Allen, 502 F.3d 1255, 1271 (11th

Cir. 2007), *abrogated on other grounds, by* Sossamon v. Texas, 563 U.S. 277, 131

S. Ct. 1651, 179 L. Ed. 2d 700 (2011).  In order to satisfy section 1997e(e), a prisoner

must allege more than a de minimis physical injury.  Mitchell v. Brown & Williamson

Tobacco Corp., 294 F.3d 1309, 1312–13 (11th Cir. 2002); *see also* Harris v. Garner,

190 F.3d 1279, 1282, 1286–87 (11th Cir. 1999) (finding that prisoner who was forced

to "dry shave" was de minimis injury failing to satisfy the section 1997e(e) physical

injury requirement), *reh'g en banc granted, vacated*, 197 F.3d 1059 (11th Cir. 1999),

*reinstated in relevant part*, 216 F.3d 970 (11th Cir. 2000) (en banc)) (citing Shabazz

v. Barnauskas, 790 F.2d 1536, 1538 (11th Cir. 1986) (dismissing Eighth Amendment

claim because forced shave, which caused "bleeding, inflammation, irritation,

ingrowing of hairs, infection, purulence and pain," was deemed de minimis)); Mann

v. McNeil, 360 F. App'x 31, 32 (11th Cir. 2010) (holding that § 1997e(e) barred

inmate's claims for monetary damages; inmate's complaints of vague injuries to his

back and scrapes and marks on his knees and legs did not amount to more than de

minimis physical injury); Quinlan v. Personal Transp. Servs. Co., 329 F. App'x 246,

249 (11th Cir. 2009) (holding that § 1997e(e) barred pre-trial detainee's claims for compensatory and punitive damages; complaints of temporary chest pain, headache and difficulty breathing while in transport van, as well as subsequent "continuous back pain in [his] lower back that periodically cause[d] [him] to walk hunched over," did not constitute more than de minimis physical injury required under § 1997e(e), since none of the conditions required immediate medical attention or evidenced physical injury besides discomfort); Dixon v. Toole, 225 F. App'x 797, 799 (11th Cir. 2007) (bruising or "welts" resulting from prisoner spending time in restraints found to constitute de minimis injury under Section 1997e).

Further, as might be relevant here, weight loss is not sufficient injury to satisfy the injury requirement.  Shaheed-Muhammad v. Dipaolo, 138 F.  Supp. 2d 99, 110 n.31 (D. Mass. 2001) (fatigue, weight loss, and one episode of fainting resulting in a minor head injury are insufficient); Porter v. Coombe, No. 97 Civ. 2394(KTD), 1999 WL 587896, at *3 (Aug. 4, S.D.N.Y.1999) (prisoner's § 1983 claim for lost 25 pounds due to restricted diet did not allege a sufficient physical injury); Plasencia v. California, 29 F. Supp. 2d 1145, 1152 (C.D. Cal. 1998) (weight loss insufficient to constitute physical injury).  In so stating, however, the court recognizes that in this case Plaintiff's weight loss, or his depleted condition as caused by his hunger strike, though he may attribute it to Defendant Johnson's threat of tampering with his food, is

nevertheless self-inflicted.  The court recites this law to reflect what may be Plaintiff's implication that during the cell incident he was made to perform physical activity that he was incapable of due to his condition.  The court nevertheless finds that, especially as evidenced by the video footage taken of the cell incident, Plaintiff was clearly capable of standing and walking and ultimately of properly presenting himself to be handcuffed.  Accordingly, the court finds any injury derived from his hunger strike or from being forced into physical activity despite it is de minimis.

Equally, the court finds that any injury derived from the application of chemical agents was also de minimis in nature.  Though Plaintiff proffers his own subjective statements regarding the throat or vision problems that resulted following the application of the chemical agent, he fails to draw any sort of linkage between the event and the alleged medical outcome.  Rather, he describes what would only appear as normal medical conditions that would develop in an adult male, namely, tonsillitis and a 20/70 vision assessment.  Moreover, Defendants provide medical records to show that Plaintiff's ailments were treated in the usual, appropriate manner, the only deviation coming from Plaintiff's own decision on religious grounds to refuse further intervention into his tonsillitis.  Thus, Plaintiff's claim of significant injury resulting from his being sprayed with chemical agents remains conclusory and unsupported.

Likewise, Plaintiff's claims of injury to his genital area are without support in the record.  Though Plaintiff complained about pain in this area following the incident, medical inspection revealed no outward evidence of trauma, no pain upon palpation, and a negative urinalysis.  Months later, Plaintiff reported to sick call with bumps on his inner thighs, but there is nothing in the record to indicate that these bumps are a serious problem or, as importantly, that they are in any way connected to the pat search incident.

Alternatively, a prisoner can avoid the § 1997e(e) limitation with a showing that a sexual act was committed upon him.  As Defendants point out, what constitutes a "sexual act" is defined under the statute with reference to 18 U.S.C. § 2246.  That statute defines a sexual act as:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
>
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
>
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
>
> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to

abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire
of any person[.]"

18 U.S.C. § 2246(2).

By contrast, the term "sexual contact" is defined under Section 2246 as:

the intentional touching, either directly or through the clothing, of the
genitalia, anus, groin, breast, inner thigh, or buttocks of any person with
an intent to abuse, humiliate, harass, degrade, or arouse or gratify the
sexual desire of any person.

18 U.S.C. § 2246(3).

Thus, Section 2246 clearly differentiates what is a "sexual act" from what is

"sexual contact," and Section 1997e(e) expressly references only a "sexual act" in its

criteria.  It is therefore clear that the type of action in question in this case, the alleged

contact of Defendant Walsh's hand with Plaintiff's genitals during the pat search, falls

into the category of "sexual contact" and not a "sexual act" as defined under the statute.

Other cases have held as much. *See* Mengesha v. Stokes, No. 3:16-CV-446-MCR-GRJ,

2017 WL 5632668, at *9 (N.D. Fla. Nov. 22, 2017), *report and recommendation*

*adopted*, No. 3:16CV446-MCR-GRJ, 2018 WL 3142940 (N.D. Fla. June 27, 2018)

(conduct found not to meet definition of a "sexual act" under Section 1997e where

officer's hand touched inmate's buttocks and anus and grabbed his testicles); Mattison

v. Williams, No. 5:14-cv-187-OC-29PRL, 2015 WL 476183, at *3 (M.D. Fla. Feb. 5,

2015) (same finding where officer aggressively touched the inmate's genitals); Woods

v. United States, No. 114CV00713MHHJHE, 2015 WL 9947694, at *3 (N.D. Ala. Dec.

11, 2015), *report and recommendation adopted*, No. 1:14-CV-0713-MHH-JHE, 2016

WL 367947 (N.D. Ala. Jan. 29, 2016) (same finding where officer put his hands inside

inmate's underwear, felt around his genital area and his buttocks).

      Because Plaintiff fails to show that he suffered more than de minimis injury as

a result of the alleged uses of force against him, nor that he was the victim of a sexual

act as defined above, he is unable to proceed  on his claims for compensatory and

punitive damages, and can only receive a nominal damage award—which generally

amounts to a token award of one dollar.

      For the aforementioned reasons, it is respectfully **RECOMMENDED**:

      That Defendants' Motion for Summary Judgment (ECF No. 56) be **GRANTED**

**IN PART** as to all of Plaintiff's claims for damages except for a nominal damage

award, and that the motion be **DENIED** in all other respects.

      At Pensacola, Florida, this 19th day of July 2018.

               */s/ Elizabeth M. Timothy*
               **ELIZABETH M. TIMOTHY**
               **CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**</u> **A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**